WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
BY: Joshua Bachrach, Esquire
joshua.bachrach@wilsonelser.com
BY: Heather J. Austin, Esquire
heather.austin@wilsonelser.com           Attorneys for Defendant, Reliance
Independence Square West                 Standard Life Insurance Company
The Curtis Center, Suite 1130 East
Philadelphia, PA 19106
215.627.6900/215.627.2665(f)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Sylvia Rodriguez,<br><br>    Plaintiff,<br><br>v.<br><br>Reliance Standard Life Insurance<br>Company,<br><br>    Defendant. | Civil Action<br><br>No.:2:12-cv-4810-DMC-JAD<br><br>DEFENDANT'S LOCAL RULE 56.1<br>STATEMENT OF FACTS IN SUPPORT<br>OF ITS MOTION FOR SUMMARY<br>JUDGMENT |

Reliance Standard Life Insurance Company, by and through its undersigned counsel, asserts the following statements of undisputed fact pursuant to Local Rule 56.1 and in support of its Motion for Summary Judgment.

1. Plaintiff worked for International Specialty Products ("ISP") as a Global Lead Analyst from May 12, 1997 until July 26, 2008. (AR300-301, 261).[1]

2. As a benefit of her employment, Plaintiff participated in ISP's group short term and long term disability insurance plans. (AR1-34).

3. Reliance Standard insured both disability plans for ISP. (AR1-34, 388-391).

---

[1] All "AR" references are to the Administrative Record, attached hereto.

1

798573.1

4. According to Plaintiff, she stopped working due to dizziness, lightheadedness, near syncope, drowsiness and fatigue. (AR360-364).

5. In her application for long term disability benefits, Plaintiff identified her claimed impairments as chronic fatigue syndrome, imbalance, lightheadedness, ear pressure, fatigue, headaches, and joint and muscle pain. (AR295).

6. There is no claim relative to Plaintiff's short term disability benefits. (Complaint).

7. Plaintiff also received long term disability benefits for 24 months from January 22, 2009 to January 22, 2011. (AR276-278, 286-292).

8. The Policy defines total disability during the 90-day elimination period (a qualifying period during which time benefits are not paid) and for the next 24 months as the inability to perform the material duties of one's *own occupation* due to an injury or sickness. (AR10).

9. The own occupation period is immediately followed by an "any occupation" period, during which Total Disability is defined as an inability to perform the material duties of *any occupation* that an insured can reasonably perform based on education, training or experience. (AR10).

10. In addition, the Policy limits benefits to 24 months for a disability that is caused by or contributed to by a mental or nervous disorder, and this limitation applied under the facts of Plaintiff's claim. (AR276-278, 286-292).

11. On October 27, 2008, shortly after Plaintiff stopped working, one of her treating physicians, Richard Podell, M.D. stated that Plaintiff would be able to return to work in approximately January 2009. (AR372-373).

12. Dr. Podell identified Plaintiff's conditions as hypotension, chronic fatigue syndrome, cognitive dysfunction, dizziness and an inability to drive alone. (AR865-868).

13. According to Dr. Podell, Plaintiff's symptoms were confirmed by a tilt table test. (AR597-601).

14. Plaintiff underwent two tilt table tests, the first of which was conducted on March 9, 2004 and the second on August 6, 2008. (AR946, 879).

15. Of note, the testing was *not* performed under circumstances that recreated Plaintiff's normal work day because testing was performed without the benefit of Plaintiff's medication at the time the reported abnormalities were provoked. (AR1239).

16. Dr. Podell further noted that Plaintiff was being treated for anxiety. (AR397-407).

17. On April 23, 2009, Dr. Podell also noted a diagnosis of anxiety, which Plaintiff disputed except during dizzy spells. (AR854-858).

18. Plaintiff also refused "valium type [medication]" because of a family history of substance abuse. (AR856-858).

19. Instead, Dr. Podell recommended breathing techniques when Plaintiff felt stressed. (AR843-844).

20. Dr. Podell referred Plaintiff to the Center for Pranic Healing, a form of alternative medicine which treats the "energy" in the body. (AR1118-1119).

21. Benefits were discontinued on November 11, 2009 due to lack of evidence of disability from a physical cause; however, they were later reinstated when

Reliance Standard received additional documentation, including an independent medical examination report that indicated that Plaintiff suffered from a mental/nervous condition that caused or contributed to her alleged disability. (AR275, 649-652, 1052-1060).

22. As of December 23, 2009, Plaintiff's treatment included diaphragmatic breathing, oil in her ears, Epsom salt baths, eating cilantro and breathing/chanting exercises. (AR649-652).

23. By this time, Plaintiff was no longer attending physical therapy. (AR649-652).

24. Dr. Podell began prescribing Prozac for use when Plaintiff was anxious. (AR938-940).

25. Plaintiff again refused to follow the doctor's recommendation regarding medication. (AR938-940).

26. Despite his constant references to Plaintiff's anxiety in his treatment records, when submitting a letter in support of Plaintiff's disability claim, Dr. Podell did not make a single reference to her anxiety. (AR907-910).

27. According to his May 29, 2010 narrative, Dr. Podell believed Plaintiff was disabled due to chronic fatigue syndrome, fibromyalgia and (orthostatic) hypotention. (AR907-910).

28. Reliance Standard requested independent medical examinations by rheumatologist Jason Faller, M.D. and otolaryngologist Stephen Freifeld, M.D. (AR1062-1071, 1052-1060).

29. Dr. Freifeld assessed Plaintiff's complaints of lightheadedness and dizziness. (AR1062-1071).

30. According to Dr. Freifeld, Plaintiff "does not have an ear or vestibular diagnosis as these areas are normal." (AR1065).

31. Plaintiff's complaints did "not have any objective findings in [Dr. Freifeld's] area of expertise." (AR1065).

32. Dr. Faller assessed Plaintiff's condition relative to the diagnoses of fibromyalgia and chronic fatigue syndrome. (AR1052-1060).

33. Dr. Faller wrote: "medical condition is chronic fatigue syndrome and a positive tilt-table test. [She] did appear depressed during the examination and crying at times. Otherwise, she looked healthy. The only findings of an objective abnormality are the tilt-table test." (AR1055).

34. According to Dr. Faller, Plaintiff's "treatment plan could include a trial of fibromyalgia-directed antidepressant medication. My prognosis is that the patient should be reevaluated after a trial of such medications. The claimant's impairment is based predominately on her fatigue and her dizziness which are not objectifiable." (AR1055-1056).

35. Dr. Faller limited Plaintiff to sedentary level work with frequent sitting and occasional standing and walking. (AR1055-1056).

36. Although his examination did not support Plaintiff's claim of disability from a physical perspective, Dr. Faller did not "exclude the possibility of a psychological component," and again, he noted that Plaintiff was "depressed during the examination and crying at times." (AR1055-1056).

37. On January 22, 2011, benefits were discontinued when Plaintiff reached the 24-month mark, at which the definition of disability changed to an *any occupation*

test and Plaintiff was no longer eligible to receive a benefit for a disability that was caused or contributed to by a mental/nervous disorder and Plaintiff was not physically totally disabled. (AR276-278).

38. Plaintiff appealed the claim determination. To address the appeal, Reliance Standard requested another independent medical examination which was performed by Michael Abeles, M.D., a rheumatologist. (AR1173-1196).

39. Dr. Abeles wrote that Plaintiff "has been diagnosed as having fibromyalgia, but fibromyalgia does not appear to be the limiting factor in her work. She has also been given a diagnosis of chronic fatigue syndrome, but it is the dizziness that seems to be her major problem." (AR1178).

40. Dr. Abeles found nothing to support any claim that fibromyalgia would prevent Plaintiff from, among other things, sitting, standing, walking, bending, squatting, climbing, kneeling, crawling, using foot controls and driving on a frequent to continuous basis. (AR1177-1178).

41. According to Dr. Abeles, Plaintiff's "major problem appears to be related to [postural tachycardia syndrome ("POTS")], but he deferred to an expert in that field. (AR1178).

42. Dr. Ihsan Haque, Board Certified in Internal Medicine and Cardiovascular Disease, conducted a review limited to POTS and autonomic/postural hypotension. (AR1233-1249).

43. Dr. Haque concluded that the diagnosis of POTS is not proven by the medical records. (AR1239).

44. Further, David Foyt, a Board Certified Otolaryngologist conducted another review and considered Plaintiff's complaints of dizziness. (AR1207-1224).

45. Dr. Foyt concluded "there is an absence of any impairment from an otolaryngology perspective related to the above conditions," and he found that Plaintiff was not restricted from any activities from an otolaryngology perspective. (AR1213).

46. Dr. Haque found nothing in the record that would preclude Plaintiff from working in a sedentary level position. (AR1239-1243).

47. Based on all of the records available, Reliance Standard upheld the decision to discontinue benefits. (AR286-292).

                                            WILSON, ELSER, MOSKOWITZ,
                                            EDELMAN & DICKER LLP

BY:   *s/Heather J. Austin*
       Joshua Bachrach, Esquire
       joshua.bachrach@wilsonelser.com
       Heather J. Austin, Esquire
       heather.austin@wilsonelser.com
       Independence Square West
       The Curtis Center, Suite 1130 East
       Philadelphia, PA 19106
       215.627.6900/215.627.2665(f)

       Attorneys for Defendant, Reliance
       Standard Life Insurance Company

Date:   May 24, 2013

798573.1