NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYLVIA RODRIGUEZ, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 2:12-cv-04810 (DMC) (JBC) |
| RELIANCE STANDARD LIFE INSURANCE COMPANY, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon (1) Motion for Summary Judgment by Plaintiff Sylvia Rodriguez ("Rodriguez" or "Plaintiff") (Pl.'s Mot. for Summ. J., May 24, 2013, ECF No. 15), and (2) Motion for Summary Judgment by Reliance Standard Life Insurance Company ("Reliance" or "Defendant") (Def.'s Mot. for Summ. J., May 24, 2013, ECF No. 16). Pursuant to Fed. R. Civ. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, Plaintiff's Motion for Summary Judgment is **denied** and Defendant's Motion for Summary Judgment is **granted**.

I. BACKGROUND[1]

Plaintiff was employed by GAF Materials Corporation as a Global Lead Analyst. As an employee benefit, Plaintiff was covered under Reliance's standard long term disability insurance policy. On or about July 26, 2008, Plaintiff asserts that she became disabled as a result of the effects of Chronic Fatigue Syndrome and related symptoms. On December 4, 2008, Plaintiff

---

[1] The facts set forth in this Opinion are taken from the parties' respective pleadings and moving papers.

1

applied for long term disability benefits stating that she was no longer able to work. Defendant paid long term disability benefits to Plaintiff during the period from January 22, 2009 to November 11, 2009 when it attempted to terminate payment. Plaintiff filed an appeal and payments were reinstated on October 21, 2010. By letter dated January 21, 2011 (the "Termination Letter"), Matrix Absence Management, Inc., acting on behalf of Defendant, informed Plaintiff that her long term disability benefits were being terminated.

As defined by the Policy, to qualify for disability during the initial 24-month period of coverage, an Insured must demonstrate an inability to perform material duties of her regular occupation. To qualify for benefits after 24 months, a claimant must be unable to perform the duties of "any occupation" which is defined as an inability to perform the material duties of any occupation that her education, training or experience reasonably allow. In addition, under the Mental or Nervous Disorders Limitation, benefits are not payable beyond 24 months for any disability that is caused by or contributed to by a Mental Disorder, including anxiety and depression.

The Termination Letter includes the following language: "Based on the documentation provided, it appears that your Total Disability is caused by or contributed to by a Mental or Nervous Disorder." The Letter also makes reference to an Independent Medical Exam showing that Plaintiff did not meet the criteria for Fibromyalgia and that no findings were made demonstrating physical impairment from sedentary work. In addition, the Termination Letter explained that the medical records received from Drs. Richard Podell and King reflected continued complaints of fatigue but did not provide sufficient medical evidence to support continued restrictions and limitations that would prevent less than sedentary work capacity.

Plaintiff appealed the termination of her benefits. After a review, Defendant sent

Plaintiff a letter, dated August 7, 2012 (the "Appeal Decision Letter"), upholding the decision to terminate benefits. The Appeal Decision Letter quotes from the reports of five independent physicians and concludes that Plaintiff is not sufficiently impaired from any of her physical conditions to preclude her from doing sedentary work. The Appeal Decision Letter also provides that based on the evidence in the administrative record, "it is reasonable to conclude that her primary impairment is psychiatric in nature with somatic manifestations." The Appeal Decision Letter points to a note by one physician that Plaintiff was crying and depressed during one of her examinations and also notes that several of Plaintiff's own treatment providers recommended psychiatric medications to manage Plaintiff's symptoms. Essentially, the Appeal Decision Letter holds that there is sufficient evidence to deny Plaintiff benefit coverage beyond 24 months on either of the two following grounds: (1) Plaintiff is not totally physically disabled and is capable of sedentary work or (2) a mental or nervous disorder contributes to Plaintiff's disability.

On August 2, 2012, Plaintiff filed suit in this Court, pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. 1132(a)(1)(B), seeking to recover the payment of long term disability insurance. Plaintiff argues that there is no evidence or diagnosis in the record demonstrating that Plaintiff has a mental or nervous disorder. Plaintiff further asserts that there is no evidence in the file that her stamina and other symptoms had improved to the point that she could perform sedentary duty type work, or even that her stamina had been tested. Finally, Plaintiff argues that Defendant violated federal regulations by failing to advise Plaintiff what information she would need to perfect her appeal.

## STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is granted only if all probative materials of record, viewed with all

3

inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); FED. R. CIV. P. 56(c). The moving party bears the burden of showing that there is no genuine issue of fact. Id. "The burden has two distinct components: an initial burden of production, which shifts to the non-moving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. Id. at 322; see also FED. R. CIV. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the non-moving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. App'x 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

### B. Standard of Review for Denial of Benefits Claim Under ERISA

A denial of a benefits claim brought pursuant to ERISA is typically reviewed under a *de novo* standard, "unless the plan grants discretionary authority to the administrator or fiduciary to determine eligibility for benefits or interpret the terms of the plan." Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where the plan grants the administrator discretionary authority, as it does here, the court reviews the administrator's exercise of that authority under an "arbitrary and capricious standard." Schwarzwaelder v. Merrill Lynch & Co., 606 F. Supp. 2d. 546, 557 (W.D. Pa. 2009) (citing Firestone, 489 U.S. at 115). Under the arbitrary and capricious

standard, "an administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)); See also Orvosh v. Program of Grp. Ins. for Salaried Emples. of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000) ("[A] plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan."). To determine whether the administrator's decision is "without reason, unsupported by the evidence, or erroneous as a matter of law," the Court must "look to the record as a whole," which "consists of that evidence that was before the administrator when he made the decision being reviewed." Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d. Cir. 1997).

## II. **DISCUSSION**

The Court must now examine the administrative record and determine whether Reliance's decision to deny Plaintiff long term disability coverage beyond 24 months was unreasonable, unsupported by evidence or erroneous as a matter of law. According to Defendant's Termination and Appeal Decision Letters, Plaintiff was denied benefit coverage beyond 24 months because (1) Plaintiff was deemed capable of sedentary work and therefore not "totally disabled" and/or (2) a mental or nervous disorder was found to contribute to Plaintiff's disability. (AR0276-0278, 0286-0291). Either ground would be sufficient to deny Plaintiff coverage beyond 24 months under her employee benefit plan. The Court will address each basis in turn.

Under Plaintiff's Plan, to be eligible for long term disability benefits, the Insured must be "Totally Disabled" which is defined as the following: "for the first 24 months for which a

Monthly Benefit is payable, an insured cannot perform the material duties of his/her Regular Occupation." (AR0287). However, "after a Monthly Benefit has been paid for 24 months," to meet the definition of "Totally Disabled," the Insured must not be able to "perform the material duties of any occupation." Id. "Any occupation" is defined as "one that the Insured's education, training or experience will reasonably allow." Id. According to the Termination Letter, Reliance found insufficient "medical evidence to support continued restrictions and limitations that would prevent less than sedentary work capacity." (AR0277).

Plaintiff's burden under the "any occupation" standard is an especially heavy one. See e.g., Pannebecker v. Liberty Life Assur. Co., 542 F.3d 1213, 1219 (9th Cir. 2008) (the "language of the 'any occupation' standard is not demanding"); Brigham v. Sun Life of Canada, 317 F.3d 72, 86 (1st Cir. 2003) ("the hurdle plaintiff had to surmount, establishing his inability to perform any occupation for which he could be trained, was a high one," and under the any occupation standard, the paraplegic claimant with severely limited function who was experiencing muscle pain was not totally disabled). In order to demonstrate "Total Disability" under the "any occupation" standard, Plaintiff must show that she is not capable of even sedentary level work. Sedentary work is defined as "exerting up to 10 pounds of force occasionally…and/or a negligible amount of force frequently…Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." (AR0289).

In its Appeal Decision Letter, Defendant cites to numerous reports from Physicians to support its determination that Plaintiff is capable of sedentary work and therefore not Totally Disabled. (AR0286-0291). For example, Dr. Jason Faller, a Board Certified Rheumatologist, performed an independent medical examination and concluded that "So far as her ability to function in a workplace is concerned, there are no objective findings to limit her functionality."

6

(AR0289). Dr. Faller also completed a Physical Capacities Questionnaire in which he determined Plaintiff to be capable of performing such activities as sedentary lifting, frequent sitting and occasional standing and walking on a regular basis in an eight (8) hour work day. Id. In addition, after an independent evaluation on April 3, 2012, Dr. Micha Abeles, also a Board Certified Rheumatologist, made the following assessment:

> Based on my examination, Ms. Rodriguez can sit, stand, walk, bend at the waist, squat, climb stairs, climb ladders, kneel, crawl, use foot controls and drive…The Fibromyalgia probably does not impact her and Fibromyalgia will not disallow her to do all of the above mentioned activities on a frequent to continuous basis. From the diagnosis of Fibromyalgia she can sit for 8 hours. She can stand and walk on and off 8 hours in an 8 hour day. She is not restricted from reaching at any level…Lifting and carrying of 10-20 pounds is not restricted. Id.

The Appeal Decision Letter also cited to reports performed by Dr. Ihsan Haque, a Board Certified Cardiologist, and Dr. David Foyt, a Board Certified Otolaryngologist, to assess Plaintiff's allegations of Postural Orthostatic Tachycardia Syndrome ("POTS"). Dr. Haque concluded that "Standing should be limited to 20 minutes at a time every three hours at most. She can read, write and answer questions, use a keyboard, stretch, eat, drink and walk." (AR0290). Dr. Haque also determined that "The diagnosis of POTS is NOT proven in the record." Id. Dr. Foyt opined that "From an otolaryngology perspective, this claimant does have full work capacity and is not restricted in any way on activities, including, but not limited to, sitting, standing, walking, reaching, lifting, carrying, and performing repetitive and fine motor hand activities." (AR0291).

The Court finds the reports of the five independent physicians to be sufficient evidence to support Defendant's conclusion that Plaintiff was no longer Totally Disabled and its consequent decision to deny Plaintiff coverage beyond the initial 24 month period. The Court finds it reasonable for Defendant, in making its decision, to rely on assessments by two

7

Rheumatologists, physicians qualified to evaluate Plaintiff's claims of chronic fatigue syndrome; two Otolaryngologists, physicians qualified to evaluate Plaintiff's claims of lightheadedness and imbalance; and one Cardiologist, a physician qualified to address the claim that Plaintiff suffered from POTS. As such, the Court finds that Defendant's decision to terminate Plaintiff's benefits based on multiple physicians' assessments that she was capable of sedentary work is not arbitrary and capricious.

Under the Plan, "monthly benefits for total disability caused by or contributed to by Mental or Nervous Disorders will not be payable beyond an aggregate lifetime maximum duration of twenty-four (24) months." (AR0287). Mental or Nervous Disorders are defined to include biopolar disorder, schizophrenia, delusional (paranoid) disorders, psychotic disorders, depressive disorders, anxiety disorders, somatoform disorders (psychosomatic illness), eating disorders and mental illness. (AR0287-0288). As explained in the Appeal Decision Letter, Defendant also terminated Plaintiff's benefits because it found that, based on the administrative record, her symptoms included anxiety/depression. (AR0288). Accordingly, Defendant concluded that that Plaintiff's benefits were subject to the twenty-four month maximum duration for Mental or Nervous Disorders because "her psychiatric condition both 'caused' and 'contributed to' her overall impairment." Id.

According the Appeal Decision Letter, Defendant concluded that Plaintiff's illness was "psychiatric in nature" based on a note by Dr. Faller that Plaintiff was "crying and depressed" as well as the opinions of several other treatment providers who "recommended psychiatric medications to manage her symptoms." (AR0291). In addition, according to the record, Plaintiff's own physician, Dr. Podell, stated the impression that Plaintiff suffered from anxiety. (AR854-855). Dr. Podell also attempted to treat Plaintiff with anxiety medication but Plaintiff

8

refused any "valium type" medication because of her family's history of substance abuse. (AR843-844, 856-858, 938-940).

The Court finds that the opinions of Dr. Faller and Dr. Podell as well as the general recommendations by Plaintiff's treatment providers for Plaintiff to take psychiatric medications is sufficient evidence to support Defendant's conclusion that a psychiatric condition caused or contributed to Plaintiff's impairment. Defendant's decision to terminate Plaintiff's benefits on the grounds that she had exhausted her twenty-four month coverage for a Mental or Nervous Disorder was not without reason or erroneous as a matter of law and should therefore be upheld.

Plaintiff also argues that Defendant's denial letter failed to advise Plaintiff what information was needed to perfect her appeal as required by 29 C.F.R. § 2560.503-1(g)(1)(iii). Plaintiff asserts that the letter merely stated that she could send written comments, records or other information and provided no guidance on how to address the specific medical issues being appealed. Based on relevant case law, the Court finds that Defendant's appeal letter was sufficiently informative and complete. See e.g. Kao v. Aetna Life Ins. Co., 647 F. Supp. 2d. 397, 411 (D.N.J. 2009); Houser v. Alcoa, Inc., CA no. 10-160, 2010 U.S. Dist. LEXIS 128281 (W.D. Pa. Dec. 6, 2010); Mazur v. Hartford Life & Accident Co., No. 06-1045, 2007 U.S. Dist. LEXIS 87477 (W.D. Pa. Nov. 28, 2007).

The denial letter in Kao advised the claimant that the record contained "insufficient quantitative clinical findings" to support the claim and invited the claimant to, on appeal, "provide quantitative data and clinical evidence to support her appeal." 647 F. Supp. 2d at 411-412. The court deemed this sufficient to satisfy ERISA's requirements, noting "[t]here is nothing cryptic about the meaning of [the] letter." Id. at 412. Like the letter at issue here, the denial letter in Houser, quoted specific plan provisions on which the denial was based, informed

9

plaintiff she could submit additional medical or vocational information and explained her appeal rights. 2010 U.S. Dist. LEXIS 128281. It was deemed adequate. Id. Likewise, arguments of inadequacy were rejected in Mazur, where the claimant was represented by counsel, the defendant provided access to the claim file, and the defendant told him that he could submit additional information in support of the claim. 2007 WL 4233400.

The Court finds that Defendant's denial letter was more than adequate in telling Plaintiff why benefits were discontinued. The letter identified the policy provisions that were relied on. (AR0276-0277). The letter summarized the bases for the claim, including Plaintiff's complaints of chronic fatigue and balance problems. (AR0277). The letter then noted the lack of abnormal findings that would support Plaintiffs claim of continuing disability. Id. Specifically, the letter addresses the records received from Plaintiff's treating physicians, Drs. Podell and King, as well as the results of independent medical examinations by a rheumatologist, Dr. Faller and an otolaryngologist, Dr. Freifeld. Id. After explaining the bases for its decision, Defendant advised Plaintiff of her right to appeal the decision. (AR277-278). This demonstrates that Defendant's appeal letter gave Plaintiff sufficient information related to her appeal and that ultimately Plaintiff received a full and fair review.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **denied** and Defendant's Motion for Summary Judgment is **granted**. An appropriate Order accompanies this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date: January 3/, 2014
Original: Clerk's Office
cc: Hon. James B. Clark, U.S.M.J.
Counsel of Record, File

10